FILED

3:13 pm, 4/26/10

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| JASON TODD KREILING and ) | Case No. 09-21000 |
| CAREY ANN KREILING, ) | Chapter 7 |
| ) | |
| Debtors. ) | |

## OPINION ON MOTION TO DISMISS

On February 18, 2010, the Court held an evidentiary hearing on the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. §§ 707(b)(1) and (2), or, in the alternative under 11 U.S.C. §§ 707(b)(1) and (3) and the Debtors' Objection. The parties were represented as stated on the record. At the conclusion of the evidentiary hearing, the court ordered the parties to file simultaneous briefs explaining each parties' mathematical calculations and closing arguments.

The Court has jurisdiction of this matter under 28 U.S.C. §§ 1334(a) & (b); 28 U.S.C. § 157(a) & (b)(1); and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. §§ 157(b)(A) & (B).

**Facts:**

Jason Todd Kreiling and Carey Ann Kreiling ("Debtors") filed for Chapter 7 bankruptcy protection on October 7, 2009. Debtors are individuals with primarily consumer debts. The Debtors scheduled the following debts: (1) secured debt in the total amount of $299,426.00; (2) unsecured debt in the total amount of $54,073.00; and, (3) no unsecured priority debt.

Along with their petition and schedules, the Debtors filed a Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Form 22A"). Debtors asserted that the presumption of abuse did not arise. The Debtors testified that they used pay stubs to determine their tax liability on line 25 (Taxes). The Debtors' Schedule I, shows a combined average monthly income of $4,974.00. Their Schedule J shows an average monthly expense of $4,884.00, leaving a net monthly income in the amount of $90.00.

The Office of the United States Trustee ("UST") contacted the Debtors requesting information of special circumstances so it could determine whether a declination of the presumption of abuse was appropriate. After a review, the UST filed a Statement of Presumed Abuse. Subsequently, the Debtors filed an Amended Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Amended Form 22A"). On the Amended Form 22A, the Debtors reported current monthly income of $6,849.00 (line 12) and annualized income of $82,188.00 (line 13). Mr. Kreiling reported current monthly income totaling $6,813.00. Mrs. Kreiling reported current monthly income totaling $36.00. The median family income for a family of four in Wyoming is $80,405.00 (line 14). After subtracting the allowed deductions, the Debtors reported a negative $356.00 monthly disposable income (line 50). According to the Debtors' Amended Form 22A, the Debtors' 60-month disposable income is a negative $21,360.00 (-$356.00 x 60) (line 51). The UST filed this motion to dismiss.

**Discussion:**

(1) **Does the presumption of abuse arise?**

The court may dismiss a case filed by an individual debtor, whose debts are primarily consumer debts, if it finds that the granting of relief would be an abuse of the provisions of Chapter 7.[1] Considering whether the granting of relief would be an abuse, the court shall presume abuse exists if the debtor's current monthly income[2] reduced by certain monthly expenses; multiplied by 60 is not less than the lesser of: 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater, or $10,950.[3] These expenses include: the applicable monthly expenses for the debtor, spouse and dependants; the actual monthly expenses for the debtor, spouse and dependants; reasonably necessary expenses incurred to maintain the safety of the debtor and the debtor's family from family violence; reasonably necessary expenses for health insurance, disability insurance, and health savings account expenditures for the debtor, spouse and dependants; and, debtor's average monthly payments on secured debts and priority claims.[4]

---

[1] 11 U.S.C. § 707(b)(1).

[2] Current monthly income is defined as the average monthly income from all sources that the debtor receives, derived during the 60-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case. 11 U.S.C. § 101(10A).

[3] 11 U.S.C. § 707(b)(2)(A)(i)(I) & (II).

[4] 11 U.S.C. § 707(b)(2)(A) (ii), (iii) & (iv).

The UST asserts that the presumption of abuse arises. Specifically, the UST challenges the Debtors' claimed expenses on their Amended Form 22A for: (1) priority debt; (2) secured vehicle payment; and (3) tax expense. The Debtors assert that the tax expense is based upon the estimated tax return calculated by H&R Block.

(a) <u>Payment on secured debt (line 42(c))</u>[5].

The UST asserts that the Debtors miscalculate the future payment for the secured claim for vehicle no. 1. Debtors list the payment to Chrysler Financial in the amount of $625.00 per month for 60 months in a hypothetical Chapter 13 setting. The UST, using numbers provided from the reaffirmation agreement between the Debtors and Chrysler Financial determined that the Debtors have 46 payments in the amount of $654.00 left on the debt for that vehicle. The UST asserts that the correct calculation would lower the payment to $501.00, (46 x $654.00 divided by 60). The Court finds that the UST's calculation, unchallenged by the Debtors; is the correct calculation. The Debtors' monthly payment to Chrysler Financial would be $501.00 in a hypothetical chapter 13 situation.

(b) <u>Priority debt (line 44)</u>.

Debtors deduct $33.00 for payment on pre-petition priority claims. However, debtors do not list any priority debt on their Schedule E. The Debtors did not testify or provide evidence regarding this alleged debt. Therefore, this expense would be

---

[5]The UST cites Line 42(a). However, the Court reviewed the vehicle on Line 42(c) as the expense on Line 42(a) refers to the Debtors' house mortgage.

disallowed on the Amended Form 22A.

(c) <u>Tax expense (line 25)</u>.

Debtors deduct $1,320.00 as a tax expense on line 25 of their Amended Form 22A. The Debtors testified that this amount of tax expense was determined by H&R Block and based on estimating their 2009 tax liability.

Form 22A, line 25 allows a deduction for "the total average monthly expenses that you actually incur for all federal, state and local taxes, other than real estate and sales taxes, such as income taxes, self employment taxes, social security taxes and Medicare taxes." The Court's review of cases interpreting this phrase in a chapter 7 agree that the amount withheld is not necessarily the amount incurred."[6] The Debtors could over withhold or owe additional taxes at the end of the year. The payroll withholding amounts for taxes are not necessarily reliable and a determination of the debtors' actual tax liability is necessary.[7]

This Court agrees with the holding in *In re Lipford*.[8] That Court held:

> "that when the six-month period required in calculating the debtor's current monthly income occurs during a period for which federal and state tax returns already have been filed, it is reasonable for the debtor to use the rate indicated on those returns. If the six-month period is only partially covered

---

[6]*In re Robinette*, Case no. 7-06-10585 SA, 2007 Bankr. LEXIS 3523 (N.M., October 2, 2007); *In re Stimac* 366 B.R. 889 (Bankr. E.D. Wis. 2007); *In re Lawson*, 361 B.R. 215 (Bankr. D. Utah 2007).

[7]*In re Bishop*, No. 07-50431, 2007 Bankr. Lexis 3096 (Bankr. E.D. Ky. Sept. 17, 2007).

[8]*In re Lipford*, 397 B.R. 320 (Bankr. D. N.C. 2008).

by a previously-filed tax return, then the debtor should proportionately mix the rate on the return with the present year's rate for the annualized income. For the period in the new tax year, the debtor should remove from the previous year's return all actual changes, such as charitable giving, and non-recurring income, loss, and deductions, and add in any new changes that the debtor can demonstrate. This process does not require the debtor's counsel to be a tax expert. Rather, it gives counsel the ability to accurately represent the debtor's tax liability."[9]

The Debtors testified and presented evidence of their filed 2009 tax return. The Debtors' 2009 federal tax return shows:

| Tax | $9,819.00 |
| --- | --- |
| Less total credits | $2,105.00 |
| Total tax | $7,754.00 |

As the Debtors filed their bankruptcy petition on October 7, 2009, the tax rate for their current monthly income would be calculated during one tax year. Fortunately, the Debtors have provided a return that shows their total federal taxes in 2009 in the amount of $7,754.00. The UST provided testimony and evidence regarding the tax for Medicare and Social Security, based upon the Debtors' current monthly income period. The total Medicare tax is $570.00. The total Social Security tax is $2,438.00. Therefore, the Court calculates the Debtors' tax, to be used on Line 25:

---

[9]*Lipford* at 334.

|  | Average monthly tax expense |
|---|---|
| Federal total tax ($7,754 divided by 12) | $646.00 |
| Social security taxes withheld during CMI period ($2,438.00 divided by 6) | $406.00 |
| Total Medicare withheld during the CMI period ($570.00 divided by 6) | $95.00 |
| Total average monthly tax expense | $1147.00 |

The Court adjusts the calculations of the Debtors' Amended Form 22A to reflect the following:

| Amended Form 22A | Debtors' | Adjusted |
|---|---|---|
| Line 25 | $ 1,320.00 | $ 1,147.00 |
| Line 33 | $ 4,172.00 | $ 3,999.00 |
| Line 42(c) | $ 625.00 | $ 501.00 |
| Line 44 | $ 33.00 | $ -0- |
| Line 46 | $ 2,905.00 | $ 2,748.00 |
| Line 47 | $ 7,205.00 | $ 6,875.00 |
| Line 49 | $ 7,205.00 | $ 4,875.00 |
| Line 50 | $ -356.00 | $ -26.00 |
| Line 51 | $-21,360.00 | $-1,560.00 |

Based upon the above analysis, the Court finds that the presumption of abuse does not arise for these Debtors under 11 U.S.C. § 707(b)(1) and (b)(2).

2. **Should the case be dismissed based upon the totality of the Debtors' financial circumstances that demonstrates abuse?**

Alternatively, the UST argues that the Debtors' case should be dismissed under the totality of the circumstances of the Debtors' financial situation demonstrating abuse. The court may dismiss a case filed by an individual debtor; whose debts are primarily consumer debts; if it finds that the granting of relief would be an abuse of the provisions of chapter 7; the presumption does not arise or is rebutted; if the court determines the debtor filed the petition in bad faith; or the totality of the circumstances of the debtor's financial situation demonstrates abuse.[10]

The UST argues that the following debts show that the Debtors' financial circumstances are an abuse of the Chapter 7 provisions: (1) excessive house payment; (2) repayment of the 401(k) loan; (3) adjusting the vehicle operating costs; (4) adjusting the tax expenses; (5) decreasing the Debtors' utilities; and (6) adjusting the Debtors' health care expenses and personal living expenses. The UST must prove abuse by a preponderance of the evidence.[11]

The court may look to pre-Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") case law to construe the meaning of the phrase, totality of the

---

[10] 11 U.S.C. § 707(b)(3).

[11] *In re Dennis P.* 407 B.R. 299 (Bank. S.D. Ohio 2009).

circumstances.[12] The Bankruptcy Court for the Northern District of Texas[13] established three sets of factors, based upon pre-BAPCPA case law, for courts to consider when analyzing the debtor's financial circumstances for abuse.

(1) Circumstances surrounding the debtor's finances, which include the debtor's ability to pay creditors; whether the debtor's budget is excessive; whether the debtor has reaffirmed a large amount of secured debt; whether the debtor has a stable income; whether there was incurrence of cash advances or excessive consumer purchases.

(2) Debtor's truthfulness on his schedules accurately reflecting the debtor's true financial circumstances and whether the debtor filed in good faith.

(3) Other factors to consider would be the reason or need for filing; was there an illness, calamity, disability or unemployment that precipitated the filing and whether the debtor could have negotiated with creditors outside of bankruptcy.

As stated in the previous analysis, the debtors are individuals. Mr. Kreiling is employed at Frontier Refinery. He testified that there had recently been lay-offs at the refinery, but at that time he was still employed. Mr. Kreiling testified that he does not expect his income to change in the future as he was told that salary increases were not going to be given, due to the financial constraints of the employer.

---

[12]*In re Pfeifer*, 365 B.R. 187 (Bankr. D. Mont. 2007).

[13]*In re Daugherty*, 2009 Bankr. LEXIS 2691 (Bankr. D. Tex., Sept 8, 2009).

Mrs. Kreiling is trained as a mamogram technician and she also previously worked at the VA Hospital as an ultrasound technician. At the time of the hearing she was unemployed. She had worked for a facility in Fort Collins, Colorado, but because she could not sign a contract agreeing to stay in Colorado if the weather or roads prohibited her from driving home to Cheyenne, the employment was terminated. Mrs. Kreiling testified that she could not agree to that provision because of the care of Debtors' children. Mrs. Kreiling also testified that she was searching for a job and had applied to many offices as well as to Target and McDonalds.

Mrs. Kreiling testified that she had returned to school to become more employable. She attends the Institute of Business and Medical Careers and will incur a cost of nearly $28,000. The program will take one to one and one-half years to complete.

The Debtors have two children, ages 14 and 11. According to their Statement of Intent, they intend to reaffirm their home at 4095 Meadow Ridge Way, Burns, Wyoming; a 2008 Dodge Ram, and a 2003 Ford Mustang Coupe. The Debtors entered into and filed reaffirmation agreements for the vehicles in the amounts of $28,852.72 and $9,981.65, respectively. The Debtors indicate they intend to surrender the 2006 Dodge. According to the docket, an order granting relief from stay was entered for GMAC to foreclose its security interest on the home on January 26, 2010.

Debtors scheduled $54,073 of unsecured debt of which $30,000 is attributable to a repossessed double wide mobile home; $9,755 to a repossessed Harley Davidson;

$11,000 for student loans; and the balance to credit cards, without a description of what was purchased.

Mr. Kreiling testified that he had looked at housing adequate to meet the needs of the family and could rent a three bedroom house for $1,200.00 - $1,500.00 a month. He also testified that the utilities cost indicated on Schedule J, was less than the amount the Debtors had to spend as they had to purchase propane that month at a cost of $700.00.

Mr. Kreiling testified that he had borrowed $31,000 from his 401(k) account. There is a balance of $17,000.00 on the debt which he pays in bi-weekly payments totaling $704.00 per month.

The UST asserts that if the Debtors downsized their housing they would be able to pay creditors $1,000 a month. Mr. Gullick's testified that the Debtors' mortgage payments are 200% over the IRS standards. Mr. Kreiling testified that alternate suitable housing, to meet the needs of his family, would cost between $1,200.00 and $1,500.00 per month. Using an average of $1,350.00 for alternate housing, the Court finds that the Debtors could pay unsecured creditors $750.00 a month if their housing budget was more in line with their income.

The UST asserted that the Debtors' living expenses, as listed on Schedule J, could be adjusted downward by applying the IRS standards. The Court's review of Schedule J, shows that the Debtors are "house and vehicle poor." The Debtors spend the majority of their income on the mortgage payment, maintenance, vehicle payments and auto

insurance. They chose to reaffirm the more expensive of the two Dodge trucks that they owned upon filing, surrendering the older and less expensive. The Debtors did not explain this choice at the hearing. The Debtors have cut their other living expenses to pay for these secured items. Mrs. Kreiling testified that she could not afford to pay the fees to maintain her license to work as a radiology technician in Wyoming, as she had to buy groceries. She also has gone back to school, incurring $28,000 additional debt to become more employable, while the Debtors list a student loan as an unsecured claim to be discharged in the bankruptcy. The Debtors' schedules show that a majority of their unsecured claims are for repossessed property, i.e. a mobile home and a Harley. The Court does not know the circumstances of either, as no testimony was provided. Mr. Kreiling is repaying the loan to his 401(k) in the amount of $704.00 a month, while unsecured creditors do not receive anything. The repayment of the 401(k) loan is a payment to the debtor and is not reasonable or necessary expense. The $704.00 a month, added to the excess housing costs would provide an estimated $1,400.00 a month available for distribution to unsecured creditors.

The standard for granting a motion to dismiss under Section 707(b)(3) is "abuse." The Debtors did not file due to sudden illness or disability. Mrs. Kreiling is unemployed, by her own choice. She also is incurring a large debt for more education while the unsecured creditors do not receive any distribution. The Debtors have the ability to pay an estimated $1,400 a month to their unsecured creditors in a Chapter 13 plan, based only

on housing that is not excessive and the repayment to themselves of the 401(k) loan. The Debtors' budget is excessive, as they are paying more to secured creditors for a house and vehicle than they can afford, while sacrificing the day-to-day living expenses. The Court does not believe the Debtors filed their petition in bad faith. But, based on the totality of the circumstances and the lower standard of abuse under BAPCPA, the Court finds that allowing the Debtors to continue in a Chapter 7 would constitute an abuse of the Bankruptcy Code within the meaning of Section 707(b)(3).

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021. The Debtors will be allowed a short time in which to convert to a Chapter 13 or 11.

DATED this 26 day of April, 2010.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge